

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
08/14/2009

| | | |
|---|---|---|
| IN RE: | § | |
| MICHAEL J. KOSOBUD, | § | Case No. 08-36581 |
| Debtor(s). | § | |
| | § | Chapter 7 |
| | § | |
| DAWN M. SCHNOLIS; fka RENNER, | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | Adversary No. 09-03041 |
| | § | |
| MICHAEL J. KOSOBUD, | § | |
| Defendant(s). | § | Judge Isgur |

### <u>MEMORANDUM OPINION</u>

### Background

Plaintiff Dawn M. Schnolis, formerly known as Dawn M. Renner, previously resided with defendant Michael Kosobud at 205 West First Street, Friendship, Adams County, Wisconsin.  On or about April 16, 2000, Kosobud, without Schnolis' knowledge or consent, connected video recording equipment to a "pin-hole" camera attached to a soap dish in the parties' bathroom wall and videotaped Schnolis in states of partial and complete nudity.  The videotapes included images of Schnolis getting undressed, taking a shower, and getting redressed.

Between approximately April 16, 2000 and September 6, 2004, Kosobud secretly possessed videotapes of Schnolis while she was in the bathroom.  On September 6, 2004, another woman, Julie K. Marks, found the videotapes.

The State of Wisconsin subsequently filed a criminal complaint against Kosobud for secretly videotaping three former female roommates, including Schnolis.  Kosobud plead guilty to felony possession of videotapes depicting nudity that were made without the knowledge or

consent of the individuals depicted, in a circumstance where such individuals had a reasonable expectation of privacy.

On May 16, 2005, Schnolis filed a civil lawsuit against Kosobud in Adams County, Wisconsin to recover damages for the personal injuries she suffered as a result of Kosobud's misconduct.   In September of 2007, the Adams County Court found that Kosobud had intentionally and unreasonably invaded Schnolis' right of privacy right, and Schnolis was awarded $34,742.30 (compensatory damages of $6,000.00; punitive damages of $4,000.00; attorney fees of $22,032.00; and taxable costs and disbursements of $2,710.30).   The order for judgment was a final order and was not appealed by Kosobud.

Kosobud is now a Texas resident.   On October 13, 2008, he filed a chapter 7 bankruptcy petition in this Court.   Kosobud's schedules listed Schnolis as an unsecured creditor holding a claim in the amount of $34,742.30.

On January 14, 2009, Schnolis filed an adversary complaint objecting to the dischargeability of the $34,742.30 Adams County judgment.   Schnolis claims that the $34,742.30 judgment is non-dischargeable under § 523(a)(6), which excepts from discharge debts incurred from a "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (2008).   Schnolis also alleges that all of the elements necessary for satisfying a § 523(a)(6) claim were resolved in Adams County; consequently, Kosobud is collaterally estopped from re-litigating any of those elements here.

Kosobud asserts that the $34,742.30 judgment is dischargeable because the Adams County court did not specifically find that his actions were substantially certain to result in injury to Schnolis.   Kosobud contends that Schnolis is required to prove he committed a "willful and malicious injury" before this Court can hold that Schnolis' judgment is nondischargeable under

§ 523(a)(6).  Likewise, Kosobud contests Schnolis' allegation that he is collaterally estopped from re-litigating the § 523(a)(6) elements here because the Adams County court allegedly did not address whether he inflicted a "willful and malicious" injury.

For the reasons set forth below, the Court grants plaintiff Dawn Schnolis' motion for summary judgment.

## Jurisdiction

The court has jurisdiction of this matter under 28 U.S.C. § 1334. This is a core matter under 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## Summary Judgment Standard

Summary judgment should be granted "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(c); *Gray Law LLP v. Transcon. Ins. Co.*, 560 F.3d 361, 365 (5th Cir. 2009). Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 in adversary proceedings.[1]

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine issue of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436

---

[1] Rule 56 was amended, effective December 1, 2007.  Although most changes were stylistic, the changes to Rule 56(c) were substantive.  Prior to the amendment, Rule 56(c) provided that the Court "shall" grant summary judgment if the relevant criteria were met.  Effective December 1, 2007, the word "shall" was changed to "should".  The Committee Notes to the 2007 amendment state that the word "[s]hould" was substituted for "shall" to recognize that, "although there is no discretion to enter summary judgment when there is a genuine issue as to any material fact, there is discretion to deny summary judgment when it appears that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56 advisory committee's notes (2007). As one commentator noted, "even when a motion for summary judgment is properly made and supported, it need not be granted . . . [s]uch a motion may be granted - indeed, it should be granted - but it does not have to be granted."  Bradley S. Shannon, *Should Summary Judgment Be Granted?*, 58 Am. U. L. Rev. 85, 95 (2008).

F.3d 551, 557 (5th Cir. 2006). A genuine issue of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) ("A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party."); *James v. Tex. Collin County*, 535 F.3d 365, 373 (5th Cir. 2008). A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009); *LeMaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007). Nevertheless, a court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F. 393, 405 (5th Cir. 2003). The Court should not weigh the evidence inasmuch as a credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara v. Garber*, 353 F.3d 393, 403 (5th Cir. 2003); *Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine issue of material fact. *Sossamon*, 560 F.3d at 326; *U.S. v. 92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008). The non-moving party has a duty to respond with specific evidence demonstrating a disputed fact issue. *Celotex Corp. Cattrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *92,203.00*

*in United States Currency*, 537 F.3d at 507. When identifying specific evidence in the record, the non-movant must "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004); *Raga v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

If the movant does not bear the burden of proof, the movant must show the absence of sufficient evidence to support an essential element of the opposing party's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412; *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006). Movants who do not bear the ultimate burden of proof often seek summary judgment after discovery has produced insufficient evidence to support the non-moving party's claims.  Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324. The non-movant must "go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue" rather than relying on conclusory allegations. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 163–64 (5th Cir. 2006); *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Ultimately, the motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## Admissible Evidence

At the outset, the Court must address Kosobud's claim that all of the documents offered by Schnolis are inadmissible.  Kosobud contends that Schnolis failed to properly authenticate the documents she submitted to the court as evidence in support of her motion for summary judgment. He asserts that under Federal Rules of Evidence 902(1) and (2), public documents are only admissible if they have the seal of the government entity from which they came, or, if the

public entity has no seal, a certification from a person within that governmental entity swearing to the authenticity of the documents.

Kosobud's argument is incorrect.  Rule 902 states that "[e]*xtrinsic evidence* of authenticity as a condition precedent to admissibility is not required with respect to" domestic public documents (i) under seal, or (ii) certified by an authorized public official.  FED. R. EVID. 902(1)-(2) (emphasis added).  Rule 902 does not hold, as Kosobud maintains, that public documents are *only* admissible when either under seal or certified.  Instead, it provides that "extrinsic evidence" is unnecessary when such conditions are met.  *See* Christopher R. Green, *"This Constitution": Constitutional Indexicals as a Basis for Textualist Semi-Originalism*, 84 NOTRE DAME L. REV. 1607, 1672 (2009) ("There are certain kinds of writing which are said to 'prove themselves' or to be 'self-identifying' . . . . [Consequently], one of these [documents] may be tendered to the court and, even without the shepherding angel of an authenticating witness, will be accepted in evidence for what it purports to be.").

Public documents may also be admitted under Rule 901(a), which provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by *evidence sufficient to support a finding that the matter in question is what its proponent claims*." FED. R. EVID. 901(a) (emphasis added).  "The requirement of satisfying the authentication standard of Federal Rule 901 is not a heavy one." 2 MCCORMICK ON EVIDENCE § 221 (6th Ed. 2006).  In fact, "proof of any circumstances which will support a finding that the writing is what it is claimed to be will suffice to authenticate the writing." *Id.* at § 224.

The Rule 901(a) requirement is met in this case with regard to two documents offered by Schnolis: Kosobud's criminal plea agreement and a portion of the civil order for judgment against Kosobud in the amount of $34,742.30.  First, in his answer to Schnolis' complaint,

Kosobud admitted the authenticity of the plea agreement when he stated that he had entered into the plea agreement attached as Exhibit 1 of the complaint. This statement constitutes a plain admission of the plea agreement's authenticity, and is sufficient to meet the admissibility standards under Rule 901(a).

Kosobud also admitted in his answer that he had been involved in a civil lawsuit with Schnolis, which resulted in an order for judgment against him.  Kosobud highlighted a portion of the state court's order for judgment, which he cited as Exhibit 3 of the complaint, finding that he had "intentionally and unreasonably invaded the privacy rights of [Schnolis]."  In so doing, Kosobud acknowledged the authenticity of this portion of the order for judgment.  This portion of the order for judgment is therefore admissible under Rule 901(a).

The Court declines to rule upon the admissibility of the remainder of the documents offered by Schnolis.  The Court finds that the evidence within the plea agreement and the relevant portion of the order for judgment is sufficient to resolve this case.

### Collateral Estoppel

Collateral estoppel, also known as issue preclusion, precludes a party from re-litigating an issue when the issue "has once been determined by a valid and final judgment." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. 1995) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)); *Quinney Elec., Inc. v. Kondos Entm't, Inc.* 988 S.W.2d 212, 213 (Tex. 1999). Collateral estoppel has a narrower scope than res judicata.  Res judicata bars re-litigation of any claim or issue that *should* have been litigated in a prior action, regardless of whether a particular claim or issue was *actually* litigated. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex. 1992); *In re Davenport*, 353 B.R. 150, 191 (Bankr. S.D. Tex. 2006).  Collateral estoppel precludes "only the relitigation of issues which were actually litigated in a prior suit." *Nu-Way*

*Energy*, 205 S.W.3d 667, 677 (Tex. App.—Waco 2006) (citing *Van Dyke v. Boswell, O'Toole,*
*Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985); *In re Davenport*, 353 B.R. 150, 192
(Bankr. S.D. Tex. 2006).

       Schnolis claims that all the elements necessary to satisfy a § 523(a)(6) inquiry were
previously determined in Adams County state court and, therefore, Kosobud is collaterally
estopped from re-litigating the elements here.  Kosobud admits that the state court found (i)
Kosobud acted "intentionally and unreasonably," and (ii) "in intentionally disregarding each
Plaintiff's right of Privacy, [Kosobud's conduct] warranted the assessment of punitive damages."
(Docket Entry No. 9 at 2).  Nevertheless, Kosobud contends that the state court stopped short of
finding that Kosobud's behavior amounted to what would be considered a "willful and malicious
injury" under § 523(a)(6).  Kosobud asserts that because the doctrine of collateral estoppel only
prevents the "relitigation of issues which were actually litigated in a prior suit," its application in
the context of this case is premature.  *See Nu-Way Energy*, 205 S.W.3d at 677.

       The Court need not consider Kosobud's claim that the state court failed to address
whether Kosobud inflicted a "willful and malicious injury" upon Schnolis.  As will be discussed
below, Kosobud's act of intentionally videotaping Schnolis without her consent is sufficient for
resolution of this case.  Neither party disputes that this videotaping occurred or seeks to re-
litigate the issue.  Accordingly, the collateral estoppel question is moot.

### Section 523(a)(6)

       Within the parameters of the evidence that we will consider, this court holds that
Kosobud committed a "willful and malicious injury" as stated by the Supreme Court in
*Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998), and later
extended by the Fifth Circuit in *Miller v. J.D. Adams Inc. (In re Miller)*, 156 F.3d 598, 603 (5th

Cir. 1998).  In *Kawaauhau*, the Supreme Court defined the scope of the "willful and malicious injury" exception under § 523(a)(6). *Kawaauhau*, 523 U.S. at 61.  Ultimately, the Court focused on defining the word "willful" and stated that it "modifie[d] the word "injury," indicating that non-dischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id.* (emphasis in original).  The Court held that debts arising from recklessly or negligently inflicted injuries did not fall within the "willful and malicious injury" exception to discharge. *Id.* at 64.

The Fifth Circuit extended the Supreme Court's reasoning in *Kawaauhau* by establishing a specific standard for determining whether a debtor has committed a "willful and malicious injury." *Miller*, 156 F.3d at 605.  The Fifth Circuit held that "an injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." *Id.*

This is a very unusual case.  In his plea agreement, Kosobud admitted to intentionally making videotapes that depicted the nudity of Schnolis without her knowledge and consent in a circumstance in which she had a reasonable expectation of privacy.  He also admitted to possessing these videotapes for a period of at least four years before they were discovered.  The state court judgment in Schnolis' civil action against Kosobud found that he had intentionally and unreasonably invaded the privacy rights of Schnolis.

This court finds the facts of this case are sufficient to hold that Kosobud committed a "willful and malicious" injury to Schnolis.  The intentional act of invading Schnolis' privacy in such an invasive and pernicious manner constitutes a per se "willful and malicious" injury. *See K-mart Corp. Store No. 7441 v. Trotti,* 677 S.W.2d 632, 638 (Tex. App.—Houston [1st Dist.] 1984), *writ ref'd n.r.e.*, 686 S.W.2d 593 (Tex. 1985) ("The basis of a cause of action for invasion

of privacy is that the defendant has violated the plaintiff's rights to be left alone. This intrusion itself is actionable, and the plaintiff can receive at least nominal damages for that actionable intrusion . . . . The appellants' improper intrusion of an area where the appellee has manifested an expectation of privacy alone raised her right to recover."). Indeed, Kosobud's act itself is the injury.[2] *See Trevino v. Sw. Bell Tel. Co.*, 582 S.W.2d 582, 584 (Tex. Civ. App.—Corpus Christi 1979, no writ) ("The invasion of privacy is a willful tort which constitutes a legal injury.")

Furthermore, because the act itself is the injury, under either standard established by the Fifth Circuit, Kosobud's intentional invasion of Schnolis' privacy constitutes a "willful and malicious" injury sufficient to meet the exception to discharge under § 523(a)(6).

Schnolis' motion includes sufficient summary judgment evidence to support her § 523(a)(6) claim. Kosobud did commit a "willful and malicious" injury as shown by Kosobud's plea agreement and the admitted portion of the state court judgment.  This evidence is sufficient to demonstrate that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.

---

[2] Although Wisconsin law is applicable in this case, counsel has not presented the Court with any Wisconsin law contrary to Texas Law.  Therefore, the Court assumes, as it must, that Wisconsin invasion of privacy law is in accord with Texas law.  *See Strickland v. Transamerica Ins. Co.*, 481 F.2d 138, 148 n.11 (5th Cir. 1973) (applying Louisiana law within the forum state of Texas because no Texas law was dispositive of the issue); *Seguros Tepeyac, S.A., Compania Mexicana de Seguros Generales v. Bostrom*, 347 F.2d 168, 174-75 n.3 (5th Cir. 1965) (discussing the presumption of the forum state's law in the absence of credible proof that a foreign law applies); *In re Holdaway*, 388 B.R. 767, 775 n.2 (Bankr. S.D. Tex. 2008) ("[A]bsent the proper invocation of foreign law by pleading and proof, Texas courts must presume the foreign law to be the same as that of Texas." )

## Conclusion

For the reasons set forth above, the Court grants plaintiff Dawn Schnolis' Motion for Summary Judgment.  A separate judgment will be issued.

SIGNED **August 13, 2009.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE